In the United States District Court
for the Southern District of Ohio
Western Division at Dayton

---

Thomas Brandenburg,

    *On behalf of himself and those similarly situated*,

        Plaintiff,

    v.

Cousin Vinny's Pizza, LLC, et al,

        Defendants.

Case No. 3:16-cv-516

Judge Walter H. Rice

---

Reply in Support of Plaintiff's Motion to Conditionally
Certify an FLSA Collective Action and to Authorize Notice

---

Defendants are unable to oppose Plaintiff's Motion on a substantive basis because there is no realistic dispute that Plaintiff and the class members are similarly situated. In fact, Defendants admit as much in their Answer. *See* Answer, Doc. 11, ¶¶ 25, 32, 41, 49, 65, 73, 81, 89, 97, 105, 129, 164, 165, 167, 168, 171, 180.[1] Since Defendants cannot truthfully dispute the most critical issue of collective action certification—whether Plaintiff and the putative class members are similarly situated—Defendants are forced into an argument mainly based on the quantity of Plaintiff's evidence. *See* Doc. 13, Page ID # 266.

Contrary to Defendants' quantity-based argument, Plaintiff is not required to produce mountains of evidence to justify this Court conditionally certifying a collective action. Indeed, the very nature of the Sixth Circuit's two-step certification process is based on aggrieved workers meeting a "slight" burden with what evidence is available at the start of a lawsuit. *See*

---

[1] *See* Ex. M, Chart of Defendants' admissions in Answer relevant to the present motion.

*Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *4 (S.D. Ohio 2011) (Rice, J.) ("The Court finds that Plaintiffs have satisfied this slight burden."). Here, Plaintiff has presented the same information this and other courts have used to justify conditional certification. *See id.*; Exs. A-F, M.

1. **There is no minimum quantity of evidentiary materials required to justify conditionally certifying a collective action.**

Defendants ask the Court to impose some (unspecified) minimum quantity of evidentiary materials in order to grant a conditional certification motion. *See* Doc. 13, Page ID # 266. This request is contrary to the conditional certification case law because the only relevant question is whether Plaintiff made a "modest showing" that he is similarly situated—not identically situated—to other employees. *Atkinson v. Teletech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, *2 (S.D. Ohio Feb. 26, 2015 (Rice, J), *quoting Lewis v. Huntington Nat'l Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio May 23, 2011). Application of this "fairly lenient standard … typically results in conditional certification." *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 547 (6th Cir. 2006).

At times, this "modest factual showing" showing can be accomplished solely through the allegations in a complaint. *See Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002). At other times, courts conditionally certify collective actions based on a single declaration. *See, e.g., Ford v. Carnegie Management Services, Inc*., 2016 WL 2729700, *2 (S.D. Ohio May 11, 2016) (granting conditional certification based on a single declaration); *Sisson v. OhioHealth Corp.*, No. 2:13-cv-517, 2013 WL 6049028, at *1 (S.D. Ohio Nov. 14, 2013) (same); *see also Lacy*, 2011 WL 6149842, at *2 ("Collective actions have been certified based on *no more than* a couple of declarations and a deposition transcript." (emphasis added)).

A plaintiff's burden must be modest when they have not yet had an opportunity to gather information through discovery. *Compare Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 870 (S.D. Ohio Sept. 2, 2005) (denying conditional certification after plaintiff had "many months" of discovery during which they had access to the contact information of 300 potential class members). Either way, there is no minimum number of evidentiary items required to show a plaintiff is similarly situated to putative class members. The information contained in the items is what is important. Whether that information comes from a single declaration or ten deposition transcripts is of no consequence.[2]

**2. Plaintiff's declaration provides the Court with the information necessary to grant conditional certification.**

Defendants also attack the quality of Plaintiff's declaration while, again, avoiding the real issue of whether Plaintiff and the class members are actually similarly situated. *See* Doc. 13, Page ID # 266-70. Defendants' attack comes in two unavailing forms: (1) a comparison to the evidence in the *Lacy* case, and (2) an argument based on whether Plaintiff has personal knowledge to back up the allegations in his declaration. *Id*.

**2.1. Plaintiff presented sworn testimony of specific facts that justify conditional certification.**

As to the comparison with *Lacy*, there simply is no comparison. This is evident from the declarations submitted in *Lacy* and Plaintiff's declaration. *Compare* Exhibit N (declarations from the *Lacy* case) *with* Exhibit A. In *Lacy*, this Court found that the declarations "contain nothing more than conclusory allegations." *Lacy,* 2011 WL 6149842, at *4. Obviously, the Court is correct. In contrast, Plaintiff's declaration includes very specific facts that support finding he and the class members are similarly situated. *See* Ex. A, *e.g*., ¶¶ 14-15, 29-41.

---

[2] This is no different than proving anything else in the law—it is not the quantity of evidence that is important but what that evidence shows.

Of note, the Court in *Lacy* relied on deposition testimony to "fill[] in the necessary gaps and provide[] the justification for the conditional certification." *Lacy,* 2011 WL 6149842, at *4. Those gaps—specific allegations concerning other employees—are not present here because Plaintiff provided those facts in his declaration. *See* Ex. A, *e.g*., ¶¶ 14-15, 29-41. There is nothing special about a deposition transcript versus a sworn declaration; it is the information contained therein that matters. Here, Plaintiff's declaration provides the justification for conditional certification because it contains the types of facts the Court relied upon in *Lacy*.

### 2.2. Plaintiff has personal knowledge of the facts in the declaration and specifically explains what he knows and how he knows it.

As Defendants note, Plaintiff's declaration contains a number of instances where Plaintiff testifies that a particular fact "was his understanding." *See* Doc. 13, Page ID # 268-69. Defendants' Response then isolates those statements from the surrounding context to make the argument that Plaintiff does not have personal knowledge on which to base his "understanding." *Id*. In doing so, Defendants miss a critical piece—the rest of Plaintiff's allegations.

Plaintiff does not simply say that something was "his understanding" and leave it at that. Plaintiff explains how and why it was his understanding. *See* Ex. A; Ex. O (chart comparing statements in Plaintiff's declaration). For example, Defendants point to paragraph 28, which states, "Throughout my employment, it was my understanding that all delivery drivers who worked for Cousin Vinny's Pizza were subject to the same pay policies that I have been subjected to." *See* Doc. 13, Page ID # 269. Defendants take this statement in isolation and claim it should be excluded as something beyond Plaintiff's knowledge. In doing so, Defendants miss that Plaintiff also states how and why he knows the drivers were subject to the same policies. *See* Ex. A, ¶¶9-12, 14-15, 17-20, 29-35, 37, 39, 40-42. Incidentally, because Plaintiff explains

exactly what he knows and how he knows it in his declaration's other paragraphs, excluding Plaintiff's "it was my understanding"-style statements becomes a meaningless exercise—the statements could be excluded, but, because the relevant information is supported by information found in other paragraphs, Plaintiff's declaration still provides more than enough information to support conditional certification. (Even so, the statements should not be excluded anyway because the statements summarize Plaintiff's testimony and understanding of the facts.)

Defendants also make a passing and unspecific reference to inadmissible hearsay. *See* Doc. 13, Page ID # 270. Contrary to Defendants' claim, Plaintiff's testimony that Defendants' managers confirmed company-wide policies[3] is admissible as admissions by a party opponent under Fed. R. Civ. P. 801(d)(2)(D). *See Harrison*, 411 F.Supp.2d at 867 (holding that declaration testimony explaining statements made by store managers were admissible as admissions by party opponent).

### 3. The class definition should not be modified to exclude CVP DNC LLC, CVP Royalty LLC, CVP Dough LLC, and CVP Dough 2, LLC

Defendants complain that four of the corporate defendants do not employ delivery drivers and, accordingly, should be excluded from the notice process. *See* Doc. 13, Page ID # 270. Defendants argue "to save both sides the time and expense of sending notice to these entities and in keeping with Plaintiff's proposed class, Defendants respectfully request the Court deny the Motion with respect to [four defendants]." *Id.*

Defendants' concern and request are unfounded. Notice in collective actions is not sent to defendants or companies. Instead, notice is sent to individual workers. If a particular entity did not employ workers covered by the class definition, then no worker from that entity will receive

---

[3] *See* Ex. A, ¶¶ 14-15.

notice. Accordingly, denying the motion with respect to the four entities is unnecessary.[4] In fact, doing so may result in someone not receiving a notice when they should. For example, an employee of one of the four entities may have spent time working for another location as a delivery driver.

4. **The Court should employ efficient communication technologies to meet the goal of providing "timely, accurate, and informative" notice.**

Defendants agree that notice via direct mail is appropriate for current employees and notice via email is appropriate with regard to former employees. *See* Doc. 13, Page ID # 271. But, Defendants disagree that notice should be sent via email to current employees, via text message, and via a post at Cousin Vinny's Pizza restaurants. *Id*. Given the low-cost of the proposed electronic notices and posting, allowing for those forms of notice utilizes modern technology to most readily meet the goal of "timely, accurate, and informative" notice. *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

Although there is no "one-size-fits-all" approach to notice, the ultimate goal is always the same: provide "[a]ccurate and timely notice concerning the pendency of the collective action promotes judicial economy because it...allows [putative class members] to pursue their claims in one case where the same issues of law and fact are already being addressed." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio Aug. 31, 2011), *citing Hoffmann–La Roche*, 493 U.S. at 170. Indeed, in *Hoffman-LaRoche*, the Supreme Court "confirm[ed] the existence of the trial court's discretion, not the details of its exercise." 493 U.S. at 170. While trial courts do not have "unbridled discretion," the only limitation the Supreme Court provided was to "respect

---

[4] Plaintiff alleges that Defendants operate all of the Cousin Vinny's Pizza restaurants as a single integrated enterprise, and therefore consider CVP DNC LLC, CVP Royalty LLC, CVP Dough LLC, and CVP Dough 2, LLC to be employers of Plaintiff and all other Cousin Vinny's delivery drivers. However, for purposes of sending notice, if none of these entities have delivery drivers on their payroll, none of the employees on their payroll will receive notice of the action.

judicial neutrality," and "avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

With the goal of providing accurate and timely notice, any method of notice that is both cost effective and likely to reach class members should be employed. To do otherwise would be to knowingly ignore an effective mode of communication that has a good probability of providing the best notice practicable.

Defendants' argument to the contrary lays bare the underlying dispute that is rarely discussed directly: the parties have competing interests. On one hand, Defendants want to tamp down participation in this lawsuit (for obvious reasons). This can be accomplished by making sure only the bare minimum is done to notify class members of the lawsuit, even if that means employing methods that may either miss notifying some class members or decrease the likelihood that class members will pay attention to the notice. On the other hand, Plaintiff wants to increase participation by making information about the lawsuit as readily available as possible. While these competing interests are certainly understandable, only one is most consistent with the Supreme Court's mandate to provide "timely, accurate, and informative" notice; and that is, obviously, the methods that get the notice in front of the most class members and in a way that makes it most likely class members will review the notice.

With the above goal of providing a useful notice that the class members will actually receive, Plaintiff has suggested (beyond email and U.S. mail notices), three cost-effective forms of notice that Defendants oppose.

First, notice should be posted on the premises at each of the Cousin Vinny's Pizza locations. This method of notice is extremely low-cost and, thus efficient. It is also appropriate to cover class members' whose addresses may have become stale. *See, e.g., Potts v. Nashville*

7

*Limo & Transport, LLC*, No. 3:14-cv-1412, 2015 WL 4198793, *8 (M.D. Tenn. Jul. 10, 2015) (granting plaintiff's request to post notice given the transient nature of the workers at issue); *Redmond v. NPC International, Inc.*, No. 13-cv-1037, 2016 WL 7223468, *9 (W.D. Tenn. Dec. 13, 2016) (requiring defendants to post notice in a conspicuous place at their restaurants).

Second, Plaintiff seeks to use text message notice. Defendants assert that such notice is inappropriate because it would require the disclosure of phone numbers to Plaintiff's counsel. *See* Doc. 13, Page ID # 272. Defendants miss that Plaintiff's counsel is entitled to the numbers anyway because all class members are also witnesses and, if the Court grants Plaintiff's upcoming class motion, clients. According to Defendants, notice via text message should not be permitted unless Plaintiff can show notice via U.S. mail and email are ineffective. However, in the present context, notice via telephone is particularly appropriate. As delivery drivers, putative opt-in plaintiffs regularly received communications from Defendants via cell phone—*e.g.*, when they were completing deliveries. If telephone was often considered the most appropriate means of communication for Defendants, Plaintiff sees no reason why it would not be an appropriate manner by which to distribute notice of this action. With regard to the privacy of putative opt-in plaintiffs, Plaintiff is willing to enter into a confidentiality agreement in order to safeguard the phone numbers provided by Defendants and ensure they are only used for legitimate purposes. Plaintiff concedes that the weight of case law has not caught up to this technology—yet. However, the most efficient mechanisms for notice in 2017 are simply not the same as they were in 1989. This Court should help lead the way in utilizing cost-effective technologies to provide notice of wage and hour collective actions.

Third, email and U.S. mail should be used for both current and former employees. Given the low cost of email, there is little reason to not use it to supplement the more traditional U.S.

8

mail notice. As for regular mail notice, when combined with email notice, it helps ensure that class members both receive the notice and recognize that it an important document that demands attention; one or the other might be disregarded as spam or a scam, but receiving both helps ensure class members recognize the importance of the document.

**5. The form of email notice and electronic signature.**

Defendants also take issue with the format of email notice, the sending of a reminder postcard[5], and the necessity of permitting putative opt-in plaintiffs to join via electronic signature.

First, with regard to the form of email notice, Defendants contend that the body of the proposed email notice should contain only "FLSA Notice – Please see the attached." *See* Doc. 13, Page ID # 273. In Plaintiff's view, this is no way to provide "timely, accurate, and informative notice," but instead reads like a spam message in a sea of spam messages that are sent via email. Class members are very likely to delete—without further reviewing—the notice format Defendants propose. Moreover, it requires class members to use a separate program to open the attachment.

Second, Defendants contend that the notice should be attached as a PDF document to the email, not as a link to the full notice on the DocuSign website. Plaintiff cannot understand why such a distinction would be necessary except as a way to limit the number of putative opt-in plaintiffs who actually join the case. Reading the notice as a PDF document versus reading the notice on the DocuSign website are effectively the same thing. The only difference is that DocuSign allows an interested person to opt-in to the case electronically and without further

---

[5] Unlike Plaintiff's other forms of notice, Plaintiff concedes that sending a reminder postcard would require paying postage on a second round of notices to the entire putative class, and therefore defers to the Court's discretion as to whether a reminder postcard is necessary.

effort after reviewing the notice, whereas a person reading a PDF document would have to print the document, sign it, pay for postage, and return the form via regular mail. Communications technology allow a more streamlined and cost-effective approach than that which Defendants seek.

Defendants' objections to the electronic signature and the form of email notice are especially curious in light of their position on how putative opt-in plaintiffs may join the case. In asserting that electronic signature is not necessary, Defendants assert that putative opt-in plaintiffs could opt in by taking a picture of the consent form with their phone and emailing it to Plaintiff's counsel. *See* Doc. 13, Page ID # 274. However, because putative opt-ins must consent "in writing," they would necessarily have to first print the PDF document, sign it, and then take a picture. As such, this would not be an "online method for returning the consent forms," as Defendants suggest. *See id.* More importantly, Defendants have drawn what appears to be an arbitrary distinction. If Defendants do not object to an opt-in plaintiff sending in a photo of a signed opt-in form, it is curious why they would object to an opt-in plaintiff providing their consent via electronic signature. Of course, the answer is simple—it is in Defendants' interest to make joining the case as cumbersome as possible. There is no reason for the Court to adopt Defendants' burdensome approach in light of far more streamlined methods.

### 6. The language of notice.

Defendants seek a number of modifications to the language of Plaintiff's proposed notice.

First, Defendants seek to include a paragraph in bold-faced, all capital letters at the very beginning of notice warning putative opt-in plaintiffs that the Court takes no position on the merits of Plaintiff's claims. *See* Doc. 13, Page ID # 275. Plaintiff is not opposed to the inclusion of this language; however, Plaintiff is opposed to Defendants' proposed placement of the

language, and that it would appear in capital, bolded letters. As Defendants would have it, this paragraph will come before any explanation whatsoever of what the notice is about. Plaintiff proposes that, if such language should be included, it be included on the bottom of the first page, after "The purpose of this Notice is to inform you about the Lawsuit, your rights, and provide you with an opportunity to join the Lawsuit for the claims outlined above." With the inclusion of this information, there is no reason for concern that the sending of notice through various mediums will suggest that the Court is encouraging participation. Instead, it will serve to ensure that the putative opt-in plaintiffs actually receive "timely, accurate, and informative" notice of the action.

Second, Defendants also seek the inclusion of: "Please do not contact the Clerk of Court or offices of the Judge or Magistrate Judge. They are not in a position to answer questions about the case." *See* Doc. 13, Page ID # 275-76. Plaintiff does not believe this sentence is necessary, as putative opt-in plaintiffs have already been instructed to direct any questions to Plaintiff's counsel.

Third, Defendants wish to include a sentence explaining that, if a putative opt-in plaintiff retains their own lawyer, that lawyer must notify the Court of their intention to join the case no later than 90 days from the date notice was sent. *See* Doc. 13, Page ID # 276. Plaintiff does not object to the inclusion of this sentence. Defendants also state in their Opposition brief that they would like references to "Plaintiff's counsel" to be changed to "the attorney you hire." Plaintiff does not believe this change would be appropriate or make sense in the context of the notice. However, Defendants' proposed notice does not appear to implement this change.

Fourth, Defendants wish to include language stating that putative opt-in plaintiffs could be required to participate in discovery, including written discovery, depositions, and trial. *See*

Doc. 13, Page ID # 276. Plaintiff objects to the inclusion of this language because it "may deter an employee from participating, and that adverse effect is disproportionate to the burden they may face by joining the action." *McKinstry v. Developmental Essential Services, Inc*., No. 2:16-cv-12565, 2017 WL 815666, *3 (E.D. Mich. Mar. 2, 2017) (refusing to include reference to opt-in plaintiffs' potential obligations to take part in discovery); *see also, e.g., Bath v. Red Vision Systems, Inc*., No. 2:13-cv-02366, 2014 WL 2436100, *7 (D. N.J. May 29, 2014) (finding that "a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted. Such statements have the potential of chilling participation in the collective action."); *Schwerdtfeger v. Demarchelier Mgmt., Inc.,* No. 10-cv-7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) ("The defendants' suggested language [regarding discovery obligations and defendant's costs] is not necessary, and would likely intimidate putative class members from opting into the case."); *Garcia v. Pancho Villa's of Huntington Village, Inc*., 678 F.Supp.2d 89, 95-96 (E.D.N.Y. Jan. 15, 2010) (refusing to include statement that "individuals who opt in will be subject to discovery obligations, depositions, trial testimony…"); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. Sept. 22, 2009) (rejecting defendant's request to include language warning opt-in plaintiffs of their potential discovery obligations). The obvious intent of the language is to dissuade class members from participating in the suit.

Finally, Defendants seek permission to include in the notice a statement that putative opt-in plaintiffs could be required to pay a portion of Cousin Vinny's court costs. *See* Doc. 13, Page ID # 277. Plaintiff objects to the inclusion of such language because it is not true. Under the Ohio Constitution, Article II, Section 34a, a plaintiff cannot be required to pay for a defendant's costs absent a finding that the action was frivolous. *See* Oh. Const., Art. II, Section 34a. As

12

such, even if such language is appropriate in some FLSA cases, it is not appropriate where, as here, the plaintiffs also have claims arising under Section 34a of the Ohio Constitution.

In any event, with regard to FLSA costs, courts have found that inclusion of a warning about defendant's costs can have an "*in terrorem* effect" on potential opt-in plaintiffs which undermines the goals of the FLSA. *See, e.g., Reyes v. Quality Logging, Inc*., 52 F.Supp.3d 849, 854 (S.D. Tex. Oct. 10, 2014) ("Given the involvement of likely unsophisticated opt-in plaintiffs, Quality Logging's proposed language may have an *in terrorem* effect that disproportionately outweighs the likelihood that these costs will occur to any significant magnitude."); *Dilonez v. Fox Linen Service Inc*., 35 F.Supp.3d 247, 256 (E.D.N.Y. July 25, 2014) (refusing to include reference to defendant's costs in notice "because it imposes an *in terrorem* effect that is disproportionate to the actual likelihood the costs…will occur"); *Abdul–Rasheed v. KableLink Commc'ns, LLC,* No. 13-cv-879, 2013 WL 6182321, \*6 (M.D.Fla. Nov. 25, 2013) ("With respect to the cable installers' potential liability for costs, the Court concludes that a warning would undermine the FLSA's goal of encouraging full enforcement of statutory rights because the warning might dissuade people from joining the lawsuit."); *Austin v. CUNA Mut. Ins. Soc.,* 232 F.R.D. 601, 608 (W.D.Wis.2006) (concurring with other courts that declined to require the inclusion of court costs language in the notice "because the statute is silent with respect to fee shifting for prevailing defendants and because the warning would chill participation in collective actions"); *Kirk v. Dr. Goodroof, Inc*., 2015 WL 6502442, \*2 (M.D.Fla. Oct. 27, 2015) ("Given the chilling effect such a warning [about defendant's costs] may have on a potential class member's decision to opt-in, the Court will decline to include such language in the Notice."); *Douglas v. Xerox Business Services, LLC*, 2015 WL 12930486, \*4 (W.D. Wash. Feb. 9, 2015) ("The Court finds that the potential chilling effect of the above-

13

quoted language [regarding liability for defendant's costs] outweighs its utility."); *Carrillo v. Schneider Logistics, Inc.,* No. 11-cv-8557, 2012 WL 556309, *14 (C.D.Cal. Jan. 31, 2012), *aff'd,* 501 Fed.Appx. 713 (9th Cir.2012) (declining to include warnings about court costs in the notice to potential opt-ins because "the potential chilling effect of defendants' proposed warning outweighs the realistic likelihood that any future opt-ins would be required to pay a portion of defendants' litigation costs");  *Kesley v. Ent. U.S.A. Inc.,* 67 F.Supp.3d 1061, 1074 (D.Ariz. Dec. 17, 2014) ("The only possible purpose this admonishment could serve is to discourage participation in the lawsuit."); *McKinstry*, 2017 WL 815666, *3 (rejecting defendant's request to include reference to defendant's court costs); *Bath*, 2014 WL 2436100, at *7 (same); *Schwerdtfeger,* 2011 WL 2207517, at *6 (same); *Delaney*, 261 F.R.D. at 59 (same); *Ratliff v. Pason Systems USA Corp*., 196 F.Supp.3d 699, 700-01 (S.D. Tex. July 21, 2016) (same); *Abeldano v. HMG Park Manor of Westchase, LLC*, No. H-16-1044, 2016 WL 5848890, *9 (S.D. Tex. Oct. 6, 2016) (same). Again, this is just another tactic to scare class members and should be rejected.

### 7.  Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to (1) conditionally certify a collective action consisting of Defendants' current and former delivery drivers, (2) approve the Plaintiff's proposed notice of the action, (3) order Defendants to provide name and contact information for all potential Collective members, (4) authorize Plaintiff to send the notices via first class mail, email, and text message, (5) require Defendants to post the notice in their work locations, and (6) authorize putative Collective members to opt in by using an electronic signature.

If the Court elects to deny Plaintiff's motion for conditional certification, then the Court should do so without prejudice subject to re-filing after additional discovery. *See, e.g., Combs v. Twins Group, Inc.*, No. 3:16-cv-295, 2016 WL 7230854, *3 (S.D. Ohio Dec. 14, 2016) (denying plaintiff's motion for conditional certification without prejudice to re-file if new information is discovered).

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Eric Kmetz (0092369)
Andrew P. Kimble (0093172)
Markovits, Stock & DeMarco LLC
3825 Edwards Road, Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0213
Email: abiller@msdlegal.com
Email: ekmetz@msdlegal.com
Email: akimble@msdlegal.com

*Counsel for Plaintiff*

15

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was served upon counsel for Defendants through the Court's ECF system.


_/s/ Andrew Kimble_____
Andrew Kimble