IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS BRANDENBURG, *et al.*,

    *On behalf of themselves*
*and those similarly situated,*

    Plaintiffs,

    v.

COUSIN VINNY'S PIZZA, LLC, *et al.*,

    Defendants.

:

:

:

:

Case No. 3:16-cv-516

JUDGE WALTER H. RICE

MAGISTRATE JUDGE MICHAEL
J. NEWMAN

---

ENTRY SUSTAINING MOTION TO CONDITIONALLY CERTIFY AN
FLSA COLLECTIVE ACTION AND TO AUTHORIZE NOTICE OF
PLAINTIFFS THOMAS BRANDENBURG, MICHAEL DOOLIN, KURTIS
MEDLEY AND BENSON RUSSELL, ON BEHALF OF THEMSELVES
AND THOSE SIMILARLY SITUATED (DOC. #5); PARTIES SHALL
COMPLY WITH THE FORM AND PROCEDURES FOR NOTICE TO
POTENTIAL OPT-IN COLLECTIVE MEMBERS SET FORTH HEREIN

---

Plaintiffs Thomas Brandenburg ("Brandenburg"), Michael Doolin ("Doolin"), Kurtis

Medley ("Medley") and Benson Russell ("Russell"), on behalf of themselves and others

similarly situated (collectively "Plaintiffs"), have filed suit against Cousin Vinny's Pizza,

LLC, Mo Rashad ("Rashad"), and numerous limited liability corporations[1] which are

owned and operated by Rashad as a single integrated enterprise (collectively

"Defendants" or "Cousin Vinny's"). In the lawsuit, Plaintiffs allege that Defendants have

---

[1] Cousin Vinny's Pizzeria, LLC; Cousin Vinny's Pizza #9, LLC; CVP 10, Inc.; CVP014, LLC; CVP 16 LLC;
CVP17 LLC; CVP18 LLC; CVP19 LLC; CVP DNC LLC; CVP Dough, LLC; CVP Dough 2, LLC; CVP
Royalty, LLC; MGL Pizza LLC; R&M Pizzeria, LLC; Third Day Pizzeria, LLC;

failed to pay them, as current or former delivery drivers for Cousin Vinny's, the minimum

and overtime wages to which they are entitled, in violation of:  the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Ohio Minimum Fair Wage Standards Act

("OMFWSA"), Ohio Rev. Code § 4111.01 *et seq.*; Article II, Section 34a of the Ohio

Constitution; and the Prompt Pay Act, Ohio Rev. Code § 4113.15.  Doc. #28.  Plaintiffs

have filed a Motion to Conditionally Certify an FLSA Collective Action and to Authorize

Notice ("Motion").  Doc. #5.  For the reasons set forth below, and subject to the form

and procedures set forth below, their Motion is SUSTAINED.


## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cousin Vinny's is a chain of pizzerias located mainly in the Greater Dayton, Ohio,

area. Plaintiffs are, or were, employed by Cousin Vinny's as delivery drivers.  Doc. #28,

¶¶ 3-4, PAGEID #412.  During their employment, Plaintiffs were non-exempt employees

subject to the minimum and overtime wage requirements of the above federal and state

laws.  Plaintiffs allege that, despite "spend[ing] approximately half of their time at work

completing non-tipped duties inside the restaurant," *id.*, ¶ 7, PAGEID #413, they "were

nonetheless compensated at minimum wage minus a 'tip credit'[,]" for all hours spent

working.  *Id*.  Specifically, Brandenburg avers that he was hired as a delivery driver for

Cousin Vinny's in February 2014 at a rate of $5.00 per hour.  That rate is less than the

federal and Ohio minimum wages for untipped employees, *i.e.*, the "basic minimum

wage," of $7.25 and $8.15 per hour, respectively, but is greater than the Ohio minimum

wage for tipped employees of $4.08 per hour.  Doc. #5-1, ¶¶ 3, 9, PAGEID #82, 83;

Ohio Const. art. II, § 34a; 29 U.S.C. §§ 203(m, t), 206(a).  While Brandenburg

2

periodically received raises until he resigned his position at Cousin Vinny's on November 30, 2016, he was always paid less than the basic minimum wage. *Id.*, ¶¶ 10-11, PAGEID #83; Ohio Const. art. II, § 34a.

Also, Plaintiffs were required "to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, . . . cellular telephone charges, . . . and other equipment necessary for delivery drivers to complete their job duties[,]" Doc. #28, ¶ 207, PAGEID #437, yet "were reimbursed a flat per delivery amount, no matter how many miles the delivery driver travelled to complete the delivery." *Id.*, ¶ 209. The flat reimbursement rate is inadequate to cover the costs incurred by the drivers. *Id.*, ¶¶ 210, 216-18, PAGEID #437, 438. Plaintiffs claim that Defendants' failure to fully reimburse delivery drivers for expenses incurred was also a violation of federal and state minimum and overtime wage laws. *Id.*, ¶ 221, PAGEID #439.

Brandenburg filed an initial Class and Collective Action Complaint ("Complaint") on December 23, 2016. Doc. #1. In the Complaint, Brandenburg raised claims that he intended to form the basis for a collective action arising out of Defendants' alleged FLSA violations. *Id.*, ¶¶ 230-40, PAGEID #30-31. Further, Brandenburg raised potential class action claims against Defendants arising out of their alleged violations of the OMFWSA, the Prompt Pay Act and the Ohio Constitution. *Id.*, ¶¶ 241-57, PAGEID #31-34. On February 10, 2017, Brandenburg filed the instant Motion, seeking to conditionally certify a collective of all of Defendants' current and former delivery drivers who were employed in such a capacity at some point during or after February 2014. Doc. #5; 29 U.S.C. § 255(a).

In a March 28, 2017, conference call with the Court, the parties indicated that they would need to conduct limited discovery prior to filing a motion for conditional class certification. On April 20, 2017, Doolin and Russell filed their respective notices of consent to join the captioned cause as named plaintiffs, and Medley filed an identical notice on June 8, 2017. Doc. #19-20, 29. On May 22, 2017, Plaintiffs filed a motion for leave to file an amended complaint. Doc. #25. On June 2, 2017, the Court sustained that motion and, noting that the proposed amended complaint contained new class allegations, ordered Plaintiffs to file an amended motion for conditional collective and class certification within fourteen days of filing an amended complaint. Doc. #27 (citing Doc. #25-1). Plaintiffs filed their Amended Complaint on June 2, 2017, Doc. #28, and on June 14, 2017, Plaintiffs and Defendants filed a stipulation stating that additional discovery was still necessary prior to Plaintiffs filing a motion for conditional class certification, but that no further briefing was required for the Court to rule on the instant Motion. Doc. #30.

## II.    LEGAL STANDARD

The FLSA requires covered employers to pay non-exempt employees not less than the applicable minimum wage for each hour worked, and one and one-half times the employee's regular rate of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable for the unpaid wages, plus an additional amount as liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

4

Under the FLSA, a collective action may be filed by one or more employees on behalf of themselves and other "similarly situated" employees. *Id.* However, unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The certification process in an FLSA collective action typically proceeds in two phases. Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.).

Before authorizing the plaintiffs to send the notice, however, the Court must first determine whether they have shown "that the employees to be notified are, in fact 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because this determination is generally made before discovery is conducted, plaintiffs need make only a "modest showing" at this initial stage of the litigation. *Lewis*, 789 F. Supp. 2d at 867. While "similarly situated" is not defined in the FLSA, employees are generally considered to be similarly situated if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Id.* at 868. "Plaintiffs can show they are similarly situated by showing that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Swigart v. Fifth Third Bank*, 276 F.3d 210, 213 (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009),

5

*abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, --- U.S. ----, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016). The "'similarly situated' requirement is less stringent than that for joinder under Rule 20(a) or for separate trials under Rule 42(b)[,] . . . [and] is considerably less stringent than the requirement of Rule 23(b)(3) that common questions 'predominate[.]'" *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). Application of this "fairly lenient standard . . . typically results in conditional certification." *Comer*, 454 F.3d at 547. At no point in resolving the conditional certification issue does the Court opine on, or even consider, the merits of plaintiffs' claims. *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *7 (S.D. Ohio Dec. 9, 2011) (Rice, J) (citing *Creely v. HCR Manorcare, Inc.,* 789 F.Supp.2d 819 (N.D. Ohio 2011)). Factors to be considered include: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted).

### III.    PLAINTIFFS HAVE MET BURDEN FOR CONDITIONAL CERTIFICATION

Plaintiffs request that the Court conditionally certify the following collective: "[a]ll non-owner, non-employer delivery drivers who worked for Defendants at any Cousin Vinny's Pizza location from February 10, 2014 to present, and who, in one or more workweeks, were paid less than the full nontipped minimum wage that was applicable at the time of their employment." Doc. #5, PAGEID #61 (citing 29 U.S.C. § 216(b)). Plaintiffs claim that "[t]hrough the Complaint's allegations, Plaintiff's declaration,

6

Plaintiff's employment documents, and Defendants' representations to the public,

Plaintiff meets his modest burden to show that the proposed Collective members are

similarly-situated to Plaintiff[,]" *id.*, PAGEID #63, and thus, conditional certification is

warranted.

Defendants, in their memorandum *contra*, argue that, for several reasons

Brandenburg's declaration is legally and factually insufficient, and thus, Plaintiffs have

failed to meet the threshold for conditional certification. Doc. #13, PAGEID #266 (citing

*Lacy*, 2011 WL 6149842, at *2). First, they claim that all portions of Brandenburg's

declaration in which he writes "it was my understanding" must be stricken for lack of

personal knowledge. *Id.*, PAGEID #268-69 (citing FED. R. EVID. 602; Doc. #5-1, ¶¶ 5,

13, 16, 27-28, PAGEID #82, 83, 84, 85). Further, Defendants argue that other

paragraphs in Brandenburg's declaration speak to the actions and states of mind of

individuals besides Brandenburg, and thus must also be struck. *Id.* (citing FED. R. EVID.

602; Doc. #5-1, ¶¶ 17, 35, 40, 42, PAGEID # 84, 86-87, 88).

Defendants' argument is not persuasive. If Brandenburg had stated "it was my

understanding," with no further context, then the Court would strike those portions of his

affidavit as lacking personal knowledge. Yet, Brandenburg, in his declaration, went well

beyond that simple phrase and provided reasons as to why his understanding was both

well-informed and reasonable. For instance, Brandenburg avers that "it was my

understanding that all delivery drivers who worked for Cousin Vinny's Pizza were paid

minimum wage minus a tip credit." Doc. #5-1, ¶ 13, PAGEID #83. In the next

paragraph, he states that he "was told by three managers . . . that delivery drivers are

hired on at $5.00 per hour. The managers told me this information because they

wanted me to talk to other people who might be interested in working as delivery

drivers, so that I could explain to those people the terms of employment." *Id.*, ¶ 14.

From the additional details provided, the Court may reasonably infer that the statements

in his declaration were sufficiently based on personal knowledge to satisfy Federal Rule

of Evidence 602, and they will not be stricken.

Second, Defendants claim that "[a]t a minimum, certification typically requires

more than two declarations and possibly a deposition transcript." Doc. #13, PAGEID

#266 (citing *Lacy*, 2011 WL 6149842, at *2). Defendants argue that, because Plaintiffs

failed to offer a declaration from any other Cousin Vinny's employee besides

Brandenburg, they have failed to show that the other delivery drivers are similarly

situated. *Id.*, PAGEID #266-67. This Court did not intend for its statement that

"collective actions have been certified based on no more than a couple of declarations

and a deposition transcript[,]" *Lacy*, 2011 WL 6149842, at *2, to stand for the

proposition that two declarations and deposition testimony was the minimum evidence

necessary to sustain a motion for conditional certification. Rather, the Court was merely

underscoring the modest burden that Plaintiffs face at the conditional stage—

demonstrating a "factual nexus" that allows the Court to infer that Brandenburg "has

actual knowledge about other employees job duties, pay structures, hours worked, and

whether they were paid for overtime hours." *O'Neal v. Emery Fed. Credit Union*, No.

1:13-cv-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013) (Dlott, J.) (emphasis in

original).

Brandenburg has demonstrated such a factual nexus. For example, he was told

by his supervisors that compensating delivery drivers the tipped minimum wage of

$5.00 per hour was a uniform practice. Doc. #5-1, ¶¶ 13-14, PAGEID #83. He identifies at least four other delivery drivers "who were required to work inside the store without receiving tips for large periods of time, often roughly half of their time at work. I know this because I saw them complete this work and worked alongside them." *Id.*, ¶ 31, PAGEID #86.[2] Moreover, Plaintiff set forth specific facts regarding manager training, delivery drivers working at multiple Cousin Vinny's locations, and uniform promotional, management, employment and payroll practices across all Cousin Vinny's locations. *Id.*, ¶¶ 32-41, PAGEID #86-87. From those facts, the Court may reasonably infer that the job duties and wage and hour practices for delivery drivers were set by Rashad and uniform across all Cousin Vinny's locations.

In sum, Plaintiffs have demonstrated that all other delivery drivers were similarly situated, and the proposed collective may be conditionally certified.

## IV.  NOTICE AUTHORIZED UNDER THE FOLLOWING PARAMTERS

### A.  Notice Applies to All Defendants

In their memorandum *contra*, Defendants state that "CVP DNC LLC, CVP Royalty LLC, CVP Dough LLC, and CVP Dough 2, LLC do not employ any delivery drivers as they do not operate as Cousin Vinny's restaurants." Doc. #13, PAGEID #270 (citing Doc. #13-2, ¶¶ 3-8, PAGEID #286-87). "Therefore, . . . in keeping with Plaintiff's proposed class, Defendants respectfully request the Court deny the Motion with respect to CVP DNC LLC, CVP Royalty LLC, CVP Dough LLC, and CVP Dough 2, LLC." *Id.*

_____

[2] Contrary to Defendants' argument, Doc. #13, PAGEID #266, Brandenburg not knowing the first and last names of his former co-workers does not demonstrate a lack of personal knowledge. Nor does it undermine the substance and veracity of Brandenburg's statement.

Defendants' argument is not persuasive, for two reasons.  <u>First</u>, notice of the lawsuit will not be sent to individual companies, but to individual workers.  Thus, if one of the above-discussed defendants "did not employ workers covered by the [collective] definition, then no worker from that entity will receive notice."  Doc. #15, PAGEID #302-03.  <u>Second</u>, as Plaintiffs correctly note, one or more of the above entities may be employing individuals who previously worked as delivery drivers at a Cousin Vinny's restaurant, and failing to include those entities "may result in someone not receiving a notice when [he or she] should."  Doc. #15, PAGEID #303.  Accordingly, all named Defendants shall be subject to the Court-authorized notice.

### B.  Notice may be Given to Potential Collective Members via Text Message, Electronic Mail and Regular Mail

Plaintiffs seek to transmit notice to all individuals who worked as Cousin Vinny's delivery drivers at any time on or after February 10, 2014, via regular mail (including, but not limited to, United States Postal Service, United Parcel Service or FedEx), email and mobile phone text message.  Further, they seek authorization to post the notice at all Cousin Vinny's restaurants.   Doc. #5, PAGEID #73-74.  In support, Plaintiffs argue that neither the FLSA nor the Supreme Court mandates that notice be transmitted to potential collective members in any particular format.  Rather, the notice need only be "timely, accurate, and informative."  *Id.*, PAGEID #74 (quoting *Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).  To that end, Plaintiffs note that numerous courts have allowed notice to be transmitted via email and text message.  *Id.*, PAGEID #75-76.

10

Defendants do not object to notifying current employees via postal mail and former employees via electronic mail. Doc. #13, PAGEID #271. However, they argue that informing potential collective members via postal mail, regular mail, text message and posting at restaurants is "unnecessary, duplicative and outweighed by the privacy interests of [Brandenburg's] former co-workers." *Id*. They note that Districts Courts within the Southern District of Ohio have typically allowed only one method of notice "unless there is a reason to believe that method is ineffective[,]" *id*. (quoting *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (Black, J.)), and have "disallowed duplicative notices as to current employees in the forms of posting, email, and direct mail." *Id*., PAGEID #271-72 (citing *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016); *Lewis v. Huntington Nat'l Bank*, No. C2:11-cv-58, 2011 WL 8960489 (S.D. Ohio Jun. 20, 2011) (Marbley, J.)). Thus, they argue that Plaintiffs should not be allowed to post the notice at Cousin Vinny's locations; nor should they be permitted to send notice via electronic mail to current employees. *Id*., PAGEID #271.

Further, Defendants object to notifying potential collective members via text message. They argue that invading the privacy interests of these individuals, who are not currently parties, by divulging their telephone numbers, outweighs any convenience or minimal increase in effectiveness of notice that might occur as a result of notification in that manner. Doc. #13, PAGEID #272. In support, they note that Courts have typically only allowed notification via text message when a plaintiff has made a showing of special need. *Id*. (citing *Swigart*, 276 F.3d at 215; *Hardesty v. Kroger Co.*, No. 1:16-cv-298, 2016 WL 3906236 (S.D. Ohio Jul. 19, 2016) (Black, J.); *Lemmon v. Harry &*

11

*David Opers., Inc.*, No. 2:15-cv-779, 2016 WL 234854 (S.D. Ohio Jan. 20, 2016) (Smith, J.); *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2014 WL 2737990 (S.D. Ohio Jun. 17, 2014) (Black, J.); *Lutz v. Huntington Bancshares*, No. 2:12-cv-1091, 2013 WL 1703361 (S.D. Ohio Apr. 19, 2013) (Frost, J.)). As Plaintiffs have not shown that notice via postal or electronic mail is unlikely to be effective in reaching potential opt-in plaintiffs, Defendants argue that they should not be allowed to send notice via text message. *Id.*

In their reply memorandum, Plaintiffs argue that Defendants are trying to "tamp down" participation in the lawsuit, which is contrary to the Supreme Court's mandate that "timely, accurate, and informative" notice be conveyed to all putative collective members. Doc. #15, PAGEID #304 (citing *Hoffman-La Roche*, 493 U.S. at 172). To that end, Plaintiffs claim, all forms of notice should be permitted. Plaintiffs argue that posting the notice at all Cousin Vinny's locations is economical, and will ensure that notice reaches current Cousin Vinny's employees for whom Defendants do not have current, accurate postal mail addresses. Doc. #15, PAGEID #304-05 (citing *Redmond v. NPC Int'l, Inc.*, No. 13-cv-1037, 2016 WL 7223468, at *9 (W.D. Tenn. Dec. 13, 2016); *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at * 8 (M.D. Tenn. Jul. 10, 2015)). Further, Plaintiffs claim that potential opt-in plaintiffs, as Cousin Vinny's drivers, are both potential witnesses at trial and potential clients if Plaintiffs' class action is certified. Thus, Defendants would be required to disclose their drivers' phone numbers at some point, and Plaintiffs are willing to enter into a confidentiality agreement or stipulated protective order to ensure that the telephone numbers of the potential opt-in plaintiffs are not disclosed. *Id.*, PAGEID #305.

As both Plaintiffs and Defendants agree, the *Hoffman-La Roche* mandate of "timely, accurate, and informative" notice gives this Court wide latitude in determining he method or methods of notice that will reach the potential opt-in plaintiffs while maintaining the privacy of the not-as-yet parties to the case and ensuring that the notice does not create an undue burden on Defendants. To that end, the Court concludes that notice may be sent by Plaintiffs' counsel via electronic mail and postal mail to all current and former Cousin Vinny's delivery drivers, to the extent that Defendants have such information for putative collective members. Electronic mail is an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner. Further, given the three-year lookback period for Plaintiffs' FLSA claims, it is likely that at least some of the electronic and postal mail addresses that Defendants possess for their current and former delivery drivers are outdated. Thus, notification by both electronic mail and postal mail will adequately account for any shortcomings in the information possessed by Defendants, and Plaintiffs may send notice using both methods.

However, the Court agrees with Defendants that notice via text message is premature. Plaintiffs' proposed format for the text message—a message with a link to a URL containing the actual notice and Consent to Join form—is so cumbersome as to be invasive. Moreover, even if the delivery drivers would be members of any opt-out class, disclosure of their mobile telephone numbers would be premature, as Plaintiffs have not filed a motion for conditional certification of a Rule 23 class. Thus, Plaintiffs may not notify potential opt-in collective members of the lawsuit via text message, unless they can show that notice via postal and electronic mail is insufficient as to a given potential member.

Finally, the question of whether notice should be posted at Cousin Vinny's locations is, as discussed above, within this Court's broad discretion, and District Courts within the Sixth Circuit have split on whether to allow postings of the notice at places of work in the context of a FLSA collective action. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016) (Smith, J.); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011); *Lewis v. Huntington Nat'l Bank*, No. C2-11-cv-58, 2011 WL 8960489, at *2-3 (S.D. Ohio Jun. 20, 2011) (Marbley, J.) (refusing to authorize notice to be posted at places of work because there was no reason for the Court to conclude that sending notice via postal and electronic mail would be inadequate); *but see Redmond v. NPC Int'l, Inc.*, No. 13-cv-1037, 2016 WL 7223468, at *9 (W.D. Tenn. Dec. 13, 2016); *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at * 8 (M.D. Tenn. Jul. 10, 2015) (authorizing notice to be posted conspicuously at the places of work despite potential opt-in plaintiffs also receiving notice via postal or electronic mail).

The *Redmond* Court, in authorizing notice to be posted at the Pizza Hut locations at issue, noted that "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." 2016 WL 7223468, at *8 (internal quotation marks omitted)(quoting *D'Antuono v. C&G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); citing *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011)). The Court is persuaded that posting the notice at Cousin Vinny's locations is a low-cost, non-invasive way to ensure that timely and accurate notice of the lawsuit is conveyed to putative collective members. This Court is

mindful of its obligation to avoid the appearance of "stirring up" litigation or opining on the merits of Plaintiffs' claims. *Fenley*, 170 F. Supp. 3d at 1074-75 (citations omitted). Yet, the format and content of the notice are sufficient to avoid any appearance of bias on the part of the Court. While some courts have held that "only a single method for notification" is appropriate "unless there is a reason to believe that method will be inadequate[,]" *Lewis*, 2011 WL 8960489, at * 3 (citations omitted); *accord Fenley*, 170 F. Supp. 3d at 1075, as discussed above, the Court is concerned that Defendants may not have current electronic or postal mail addresses for all potential opt-in plaintiffs. This concern is sufficient to require posting.

In sum, Plaintiffs may transmit notice to potential opt-in plaintiffs via electronic and postal mail, at Plaintiffs' expense. A copy of the notice will also be posted in a conspicuous location at all of Defendants' places of business. However, notice via text message will not be permitted unless Plaintiffs can show that notice through the other three methods was ineffective.

### C. Disclosure of Names and Contact Information

In their Motion, Plaintiffs ask "that the Court direct Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, dates of employment, and job titles for all persons employed at Cousin Vinny's Pizza as delivery drivers between February 10, 2014[,] and the present." Doc. #5, PAGEID #78-79. In a telephonic status conference on or about March 28, 2017, Defendants agreed to provide Plaintiffs' counsel with the requested information within fifteen days of the Motion being sustained. Defendants are hereby ordered to disclose such information to Plaintiffs' counsel within the time promised.

15

**D.     Form and Content of the Notice**

Plaintiffs submitted a proposed notice as an exhibit to their Motion.  Doc. #5-7,

PAGEID #169-73.  Further, Plaintiffs request that this Court authorize a "reminder"

postcard to be sent to potential collective members who do not indicate their consent or

refusal to join within a certain amount of time.  Doc. #5-8, PAGEID #175-76.  Finally,

Plaintiffs have submitted a proposed electronic mail cover message to be sent along

with the copy of the notice.  Doc. #5-9, PAGEID #178.  Defendants submitted their own

proposed notice, Doc. #13-1, and raised several objections to Plaintiffs' notice.  Doc.

#13.  The Court considers Defendants' objections in turn.


**1.     Plaintiffs' Electronic Cover Message is Permissible**

Defendants propose that Plaintiffs attach the notice, in portable document format

("PDF"), to an electronic mail message.  Doc. #13, PAGEID #273 ("[t]his safeguard is

proposed only to retain the accuracy of the message and should not negatively affect

the reception of the notice.").  However, they object to the cover message proposed by

Plaintiffs, in which their counsel explains:  the purpose of the lawsuit; why the potential

opt-in plaintiff is being contacted; the process by which the recipient can opt in; and

contact information for Plaintiffs' counsel.  Doc. #5-9, PAGEID #178.  They argue that

such a message contravenes Plaintiffs' obligation to ensure that the notice is "accurate,

[does] not cause confusion, and [is] crafted so as to avoid any misunderstanding as to

the status of the lawsuit."  Doc. #13, PAGEID #273 (internal quotation marks omitted)

(quoting *Swigart*, 276 F.R.D. at 214; *Hardesty*, 2016 WL 3906236, at *1).  Defendants

argue that the cover electronic mail message should have no text in the body of the

email aside from the following:  "FLSA Notice – Please see the attached."  *Id*.

16

Plaintiffs argue that, because Defendants' barebones message provides no information about the lawsuit, many potential opt-in plaintiffs will delete the electronic mail message without reading the notice. Doc. #15, PAGEID 306. The Court agrees. The proliferation of computer viruses, malware and ransomware transported through electronic mail messages has caused people to be wary of opening any message or attachment from an unknown sender. It is very likely that a putative collective member would be skeptical of the vague text, and would delete the message without reading. Moreover, Plaintiffs' proposed cover message does not go into the merits of their claims or in any way suggest bias on the part of the Court. Indeed, the cover message contains no information that the potential opt-in plaintiffs could not obtain through the Public Access to Court Electronic Records website for this Court. Thus, Plaintiffs' proposed cover electronic message is permissible.

### 2.     Reminder Postcard is Premature

Plaintiffs move that this Court authorize their counsel to send a follow-up postcard to any putative collective members who had not evinced their consent or refusal to join within forty-five days of the notice being sent via postal and electronic mail. Doc. #5, PAGEID #73-74. The reminder postcard would inform the potential opt-in plaintiff of the date by which she must return her consent to join form, the relief sought in the lawsuit (recovery of unpaid wages) and the contact information for Plaintiffs' counsel. Doc. #5-8, PAGEID #175. Defendants argue that a reminder postcard would unnecessarily stir up litigation. Doc. #13, PAGEID #273-74. The Court concludes that any resolution on this issue would be premature. In light of the Court authorizing notice via postal mail, electronic mail and posting at all of Defendants'

places of business, a reminder postcard is unnecessarily duplicative and invasive at this juncture. However, if on motion, Plaintiffs can show good cause that a reminder postcard is necessary in light of low response rates to the initial sending of the notice, then the Court may authorize the sending of such a reminder at Plaintiffs' expense.

### 3.  Consent to Join Form may be Signed Electronically

Plaintiffs ask that the Court authorize potential collective members to opt in by using an electronic signature on the DocuSign website, arguing that "[p]ermitting electronic signature achieves the remedial purposes of the FLSA." Doc. #5, PAGEID #78. Defendants argue that there is no caselaw in which a District Court from the Sixth Circuit has allowed plaintiffs to opt in via electronic signature. Doc. #13, PAGEID #274. Moreover, they claim, allowing such a practice would be redundant, as potential collective members "need only take a picture [of the signed consent form] with their phone and attach that picture to the email" that they would send to Plaintiffs' counsel indicating their consent to join. *Id*.

Defendants' argument is not persuasive. Even assuming that putative collective members can send a picture of the signed Consent to Join form to their chosen counsel via electronic mail, they would still be required to print out the form to sign it. Doc. #15, PAGEID #307. Further, despite the lack of caselaw regarding electronic signatures in the FLSA context, federal courts have required attorneys to sign all filings electronically since the implementation of the Case Management/Electronic Case Filing ("CM/ECF") system in 2003. Defendants do not argue that the DocuSign website is a less secure or reliable means of electronic signature than is CM/ECF. Moreover, the Consent to Join form will be sent via postal mail as attachment to the notice. Thus, if putative collective

18

members would rather sign the paper copy, take a picture of it and electronically mail it to Plaintiffs' counsel, they are free to do so. However, to force potential opt-in plaintiffs to expend additional time and resources to join the instant lawsuit would serve no purpose other than to discourage potential collective members from joining the litigation. Thus, the Court will permit potential opt-in plaintiffs to sign their Consent to Join forms electronically via the DocuSign website if they so choose.

### 4. Defendants' Objections to the Language in Plaintiffs' Proposed Notice

"Defendants seek to include language relating to judicial neutrality, putative plaintiffs' right to their own counsel, putative plaintiffs' responsibilities with respect to discovery, and Defendants' good faith compliance with the FLSA." Doc. #13, PAGEID #275. The Court addresses these proposed inclusions in turn.

### a. Judicial Neutrality

Defendants seek to include two provisions that underscore: (a) the fact that the Court did nothing more than authorize the Notice to be sent; and (b) the Court's commitment to neutrality throughout the proceedings. First, Defendants ask the Court to include the below language, in bold type and all capital letters, at the top of the first page of the notice:

**ALTHOUGH THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE HONORABLE WALTER H. RICE, UNITED STATES DISTRICT JUDGE FOR THE SOUTHERN DISTRICT OF OHIO, THE COURT TAKES NO POSITION REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR DEFENDANTS' DEFENSES**.

Doc. #13, PAGEID #275 (citing *Ganci v. MBF Inspections Servs., Inc.*, No. 2:15-cv-2959, 2016 WL 5104891, at *4 (S.D. Ohio Sept. 20, 2016) (Smith, J.)) (authorizing identical language with the same bold type and capitalization). <u>Second</u>, they seek to include the following language: "Please do not contact the Clerk of Court or offices of the Judge or Magistrate Judge. They are not in a position to answer questions about the case." *Id.*, PAGEID #275-76 (quoting *Ganci*, 2016 WL 5104891, at *4).

Plaintiffs do not object to the first statement of neutrality being included, but seek to include it in regular type and capitalization at the bottom of the first page of the Notice. Doc. #15, PAGEID #307-08. The last paragraph on the first page of Plaintiffs' proposed notice states that "[t]he purpose of this Notice is to inform you about the Lawsuit, your rights, and provide you with an opportunity to join the Lawsuit for the claims outlined above." *Id.* The Court concludes that Defendants' proposed language fits naturally after the immediately preceding sentence or as a new paragraph at the bottom of the first page. Defendants' language shall be included as follows:

> **Although this notice and its contents have been authorized by the Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, the Court takes no position regarding the merits of Plaintiffs' claims or Defendants' defenses.**

Plaintiffs, in their reply memorandum, argue that the inclusion of the instruction to potential opt-in collective members not to contact the Court is unnecessary, "as putative opt-in plaintiffs have already been instructed to direct any questions to Plaintiff's [*sic*] counsel." Doc. #15, PAGEID #308. The Court agrees, and also concludes that the above statement of judicial neutrality sufficiently discourages potential opt-in plaintiffs from contacting the Court. Thus, Defendants' proposed instruction shall not be included.

**b.** **Right to Counsel of their Choice**

In furtherance of the right of FLSA collective members to retain their own counsel, Defendants seek to include the following language: "If you decide to join this lawsuit and be represented by a lawyer of your choice, that lawyer will have to notify the Court of your intention to join the case no later than 90 days from the date Notice is sent." Doc. #13, PAGEID #276 (quoting *Ganci*, 2016 WL 5104891, at *4). As Plaintiffs do not object to the inclusion of that sentence, it shall be included at the top of page four of the Notice. Plaintiffs do, however, object to Defendants' request that, throughout the notice, references to "Plaintiffs' Counsel" be changed to "the attorney you hire" or "Your Attorney." Doc. #15, PAGEID #308 (citing Doc. #13, PAGEID #276). Plaintiffs argue that changing the language will cause confusion, and note that Defendants did not include such language in their proposed notice. *Id*. The Court agrees, and concludes the inclusion of Defendants' proposed sentence above adequately informs putative collective members of their right to retain counsel of their choice. Thus, all references to "Plaintiffs' Counsel" shall remain unchanged.

**c.** **Participation in Discovery and Payment of Costs**

Defendants seek to amend Plaintiffs' proposed Notice to include a "statement that opt-in plaintiffs may be required to participate in written discovery and that they may be required to appear for deposition and/or trial." Doc. #13, PAGEID #276 (quoting *Ganci*, 2016 WL 5104891, at *7). Plaintiffs object to the inclusion of such language "because it 'may deter an employee from participating, and that adverse effect is disproportionate to the burden they may face by joining the action.'" Doc. #15, PAGEID

#309 (quoting *McKinstry v. Developmental Essential Services, Inc.*, No. 2:16-cv-12565, 2017 WL 815666, *3 (E.D. Mich. Mar. 2, 2017)). Plaintiff cites several cases that accord with *McKinstry's* logic. *Id.* (citations omitted). However, those cases are all from outside of the Southern District of Ohio, and Courts within the Southern District have "stated on several occasions that such information should be disseminated in FLSA notices." *Ganci*, 2016 WL 5104891, at *7 (citing *Heaps v. Safelite Sols., LLC*, No. 2:10-CV-729, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011) (Frost, J.); *Baden-Winterwood v. Life Time Fitness*, No. 2:06-cv-99, 2006 WL 2225825, at *2 (S.D. Ohio Aug. 2, 2006) (Frost, J.)). Moreover, the proposed sentence does nothing more than underscore the obligations that putative collective members would have if they opt in as plaintiffs. Thus, the statement will be included.

However, Defendants' final proposed inclusion, a paragraph stating that potential opt-in plaintiffs could be responsible for paying a portion of Defendants' court costs if Defendants are prevailing parties, Doc. #13, PAGEID #277 (quoting Doc. #13-1, PAGEID #283), would improperly dissuade putative collective members from opting into the lawsuit. While a prevailing party's court costs are generally taxed against the other party, Fed. R. Civ. P. 54(d)(1), Plaintiffs' minimum wage claims arise under both federal and Ohio law. Doc. #15, PAGEID #309. In a civil suit claiming that an employer has failed to pay the minimum wages mandated by the Ohio Constitution, a court may not impose "costs or attorney's fees on an employee except upon a finding that such action was frivolous in accordance with the same standards that apply generally in civil suits." Ohio Const., art. II, § 34a. Including Defendants' proposed paragraph creates an acute risk that putative collective members will decide not to opt in, fearing that they may incur

monetary liability in the future—a liability that this Court may not even be allowed to impose.[3] Thus, any statement about opt-in plaintiffs potentially being liable for Defendants' costs, in the event that the Defendants are prevailing parties, shall not be included.

### d. Statement of Good Faith

Defendants note that "this Court has previously held that "the notice must include language stating Defendant's denial of the allegations and its belief that it complied with the FLSA in good faith[,]" and asks that the Court include such a statement in the Notice. Doc. #13, PAGEID #277 (emphasis in original) (internal quotation marks omitted) (quoting *Ganci*, 2016 WL 5104891, at * 5; citing *Heaps*, 2011 WL 1325207, at *9). In their reply memorandum, Plaintiffs do not object to the inclusion of such language. Thus, the Court will include the phrase "in good faith" in the following sentence on the first page: "The Defendants deny the allegations and claim that they did not violate any wage and hour law, and complied with the Fair Labor Standards Act in good faith." Doc. #13-1, PAGEID #281.

### V. CONCLUSION

For the foregoing reasons, the Court SUSTAINS Plaintiffs' Motion. Doc. #5. The Court orders the following:

_____

[3] Defendants cited two cases in language regarding potential liability for attorney fees was included in a notice. Doc. #13, PAGEID #277 (citing *Lackie v. U.S. Well Servs., LLC*, No. 2:15-cv-3078, 2015 WL 395735, at *4 (S.D. Ohio Jan. 30, 2017) (Smith, J.); *Ganci*, 2016 WL 5104891, at *6). However, in neither case did plaintiffs bring claims under the minimum wage section of the Ohio Constitution.

1.    The following collective is conditionally certified:  all of Defendants' current and former delivery drivers who were employed in such a capacity at some point during or after February 23, 2014;

2.    Defendants shall provide to Plaintiffs' counsel a computer-readable list of the names and contact information of all putative collective members within fifteen days of this Entry;

3.    Plaintiffs' counsel may transmit, at Plaintiffs' cost, notice of the lawsuit to putative collective members via electronic mail and first-class U.S. mail or equivalent means;

4.    Defendants shall post copies of the notice at all of its places of business, in locations where employees would reasonably be expected to see the Notice;

5.    Plaintiffs' Proposed Notice, Doc. #5-7, shall serve as the notice to be sent to potential opt-in plaintiffs, subject to the following conditions:

a.    Putative collective members may sign the Consent to Join form electronically via the DocuSign website;

b.    The following statement shall be included at the bottom of page one of the Notice, in bold typeface: "**Although this notice and its contents have been authorized by the Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, the Court takes no position regarding the merits of Plaintiffs' claims or Defendants' defenses.**";

c.    The following statement shall be included at the top of page four of the notice:  "If you decide to join this lawsuit and be represented by a

24

lawyer of your choice, that lawyer will have to notify the Court of your intention to join the case no later than ninety days from the date Notice is sent.";

        d.      The far-right hand column in the second row of the table on page two of the notice shall include the following statement: "If you choose to join the lawsuit, you may be required to participate in written discovery and/or attend a deposition. You may also be required to attend a trial."; and

        e.      The statement immediately following the two bullet points on the page one of the notice read: "The Defendants deny the allegations and claim that they did not violate any wage and hour law, and complied with the Fair Labor Standards Act in good faith."; and

        6.      If putative collective members wish to participate in the instant lawsuit, they shall have ninety days from the date that the notice is sent to sign the Consent to Join form, return the form to Plaintiffs' counsel or counsel of their choosing. Counsel for any opt-in member must also file the signed Consent to Join form for each opt-in plaintiff within ninety days of the notice being sent.

Date: August 14, 2017

                                  WALTER H. RICE
                                  UNITED STATES DISTRICT JUDGE