IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS BRANDENBURG, et al.,

On behalf of themselves and those similarly situated,

    Plaintiffs,

v.

COUSIN VINNY'S PIZZA, LLC, et al.,

    Defendants.

:
:
:
:
:

Case No. 3:16-cv-516

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING MOTION TO CERTIFY A CLASS ACTION PURSUANT TO FED. R. CIV. P. 23, DESIGNATING THOMAS BRANDENBURG AS THE REPRESENTATIVE OF THE CLASS, AFFIRMING SELECTION OF CLASS COUNSEL AND AUTHORIZING NOTICE TO CLASS MEMBERS FOR MAIL AND EMAIL DELIVERY AS SET FORTH HEREIN (DOC. #162); OVERRULING DEFENDANTS' MOTION TO DISMISS COUNT III (DOC. #165)

---

Plaintiff Thomas Brandenburg ("Brandenburg" or "Plaintiff"), on behalf of himself and delivery drivers employed by Defendants Cousin Vinny's Pizza, LLC, Mo Rashad ("Rashad"), and numerous limited liability corporations[1] (collectively

---

[1] The following entities are owned and operated by Rashad as a single integrated enterprise and consist of Cousin Vinny's Pizzeria, LLC; Cousin Vinny's Pizza #9, LLC; CVP 10, Inc.; CVP014, LLC; CVP 16 LLC; CVP17 LLC; CVP18 LLC; CVP19 LLC; CVP DNC LLC; CVP

"Defendants" or "Cousin Vinny's"), has filed a motion pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). Doc. #162. Brandenburg seeks class certification for a class consisting of

> All non-owner, non-employer delivery drivers who worked for Defendants at any Cousin Vinny's Pizza ("Cousin Vinny's") location in Ohio at any time from December 23, 2013 to present.

The Court, having previously sustained a motion to conditionally certify a Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 201 et seq., collective action (Doc. #55), now considers, pursuant to its supplemental jurisdiction, Plaintiff's motion for class certification for three state law wage and hour-based violations that are alleged in his First Amended Class and Collective Action Complaint ("Complaint"), Doc. #28. Specifically, the three alleged violations are (1) failure to pay minimum wages (Count III, Ohio Constitution Article II, §34a); (2) failure to pay overtime wages (Count IV, Ohio Minimum Fair Wage Standards Act "OMFWSA," O.R.C. § 4111.01, et seq.); and (3) failure to pay timely wages
(Count V, "Untimely Payment of Wages," O.R.C. § 4113.15).

Brandenburg's motion to certify also requests that he be designated the class representative and his counsel, Andrew Biller and Andrew Kimble, of Markovits, Stock & DeMarco, LLC, be approved as lead counsel for the class. Doc. #162, PAGEID#1220. Finally, Plaintiff's motion seeks approval, pursuant to Rule 23

---

Dough, LLC; CVP Dough 2, LLC; CVP Royality, LLC; MGL Pizza LLC; R&M Pizzeria, LLC; Third Day Pizzeria, LLC;

2

(c)(2), of a notice to be delivered to class members by mail and email. *Id.* Exhibit 45.

Cousin Vinny's has opposed the Rule 23 motion invoking the equitable jurisdiction of this Court in order to "prevent a windfall and/or unjust result that would subvert the very purpose of the statutes." Doc. #165, PAGEID#2268. Defendants have also moved to dismiss Count III as a Rule 23 class action claim. *Id.* Plaintiff has filed a reply which includes a response to the motion to dismiss. Doc. #166.

For the reasons set forth below, and subject to the form and procedures set forth herein, Plaintiff's Motion is SUSTAINED and Defendants' Motion to Dismiss is OVERRULED.

**I.    Factual Background of Brandenburg's Claim**

Brandenburg, a delivery driver at Cousin Vinny's, worked at the Huber Heights, Ohio, location from approximately February 2014, through November 30, 2016. Doc. #162-2, PAGEID#1273. Although Plaintiff worked at only one of the Cousin Vinny's locations and was only one of over 1,000 different delivery drivers from December 31, 2013, through the present, the policies throughout all Defendants' stores were uniform. *Id.* at PAGEID#1276. In fact, Cousin Vinny's has conceded that each of the 15 different locations named in this action applied substantially the same employment policies, practices, and procedures including those relating to payment of minimum wages, overtime wages and of automobile

3

expenses to the delivery drivers who worked there.[2] Doc. #28, PAGEID#416 and Doc. #33, PAGEID#469.

Plaintiff's starting pay in February 2014, was $5.00 per hour and he was compensated at minimum wage minus a tip credit for all hours spent working. Doc. #162-2, PAGEID#1274. That rate is less than the present federal and Ohio minimum wages for untipped employees, *i.e.*, the "basic minimum wage," of $7.25 and $8.30 per hour, respectively, but is greater than the Ohio minimum wage for tipped employees of $4.15 per hour. Doc. #162-2, PAGEID#1233; Ohio Const. art. II, § 34a; 29 U.S.C. §§ 203(m, t), 206(a).

As a delivery driver, Brandenburg delivered pizza and other food items to customers. He used his own vehicle to make the deliveries and was required to maintain his vehicle in order to comply with his employer's 34-point Vehicle Inspection Report. Doc. #162-2, PAGEID#1275; Doc. #162-40, PAGEID#1447. As a result, Plaintiff paid for all his job-related expenses, including, but not limited to, insuring his vehicle, paying for vehicle maintenance and fuel costs, as well as other expenses such as cellular telephone charges and GPS equipment. Doc. #162-2, PAGEID#1275. Defendants kept no records as to the amount of expenses the delivery drivers incurred and instead simply paid the delivery drivers a flat fee per delivery amount, no matter how many miles were travelled to complete a

---

[2] Exhibit 1, attached to the Motion to Certify, identifies the specific corporate entity that operates at each of the Defendants' locations. Doc. #162-2, PAGEID#1257-1260

4

delivery. Doc. #28, PAGEID#438 and Doc. #33, PAGEID#487. Based upon the mileage and deliveries, the amount the delivery drivers received would vary per location, Doc. #162, PAGEID##1257-60, with a one-week sample showing average reimbursement of $.21 per mile. Doc. #162-42; Doc. #162, PAGEID#1231. The average reimbursement rate for Huber Heights for that same one-week sample was approximately $.19 per mile. Doc. #162, PAGEID##12231-32; Doc. #162-42, PAGEID##1476-2207.

When Brandenburg was not delivering food to customers, he was working inside the store cleaning, building pizza boxes, preparing food items, taking orders and otherwise staying "productive" as required by Cousin Vinny's. Doc. #162-2, PAGEID#1274; Doc. #162-35, PAGEID#1435. Between delivering food to customers and working inside the store, Plaintiff typically worked in excess of 40 hours a week. Doc. #162-2, PAGEID#1273. However, whether delivering food or working inside the store, which he did more than half of his work time, Plaintiff was paid the "tipped wage rate," less than minimum wage. *Id.* at PAGEID#1274.

## II. Rule 23 Class Certification Standards

### A. Introduction

For Plaintiff's motion to be sustained, Rule 23 requires that he prove the following:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to

5

the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Moreover, Fed. R. Civ. P. 23(b)(3) requires that the Court find "... that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because the class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties," *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979), Brandenburg must be "part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)), as cited in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011). Accordingly, Rule 23's requirements of numerosity, commonality, typicality and adequacy, "effectively limit the class claims to those fairly encompassed" in Brandenburg's claims. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980)).

In reviewing a motion for a class action, this Court is required to conduct a "rigorous analysis" to determine whether the requirements of

Rule 23 have been met, *Gen. Tel. Co. v. Falcon*, at 161, and while there can be no consideration of the merits of the claims, the review of the Court is such that the "preliminary factual and legal determinations with respect to the requirements of Rule 23" may overlap with the merits. In short, the requirement is not one of mere pleading but, rather, one that mandates that Brandenburg be prepared to prove that there are, in fact, sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes* at 351.

Defendants argue that the Court should invoke "its equitable jurisdiction," treat the case as a restitution claim under federal and state law and deny Plaintiff's motion to certify since Cousin Vinny's is a small "mom and pop" business and the laws cited by Plaintiff were not intended to apply to Defendants. Cousin Vinny's, however, not only fails to cite to any legal authority in support of its equitable argument, but it also ignores the fact that small businesses, earning less than $250,000 per year in gross receipts, are exempt from the Ohio minimum wage law and are permitted to pay their employees at the lower federal minimum wage. Cousin Vinny's, however, does not qualify as such a business. Because the Court can find no factual or legal basis in support of Defendants' equitable argument, it will consider Plaintiff's motion to certify pursuant to the language of and case law interpreting Rule 23 (a) and (b)(3).

### B. Rule 23(a)(1) - Numerosity

Brandenburg alleges that during the relevant time period, 1,027 delivery drivers were employed at the 15 different Cousin Vinny's locations. Cousin Vinny's does not challenge that numerical assertion. Although there is "no strict numerical test," *Young v. Nationwide Mut. Ins. Co.*, 693 F. 3d 532, 541(6th Cir. 2012), Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Court finds that the number of 1,027 delivery drivers satisfies the numerosity requirement of Rule 23.

### C. Rule 23 (a)(2) and (3) - Commonality and Typicality

Rule 23(a)(2) requires proof of common questions of law or fact, commonality and Rule 23(a)(3) requires proof that the claims or defenses of the representative parties are typical of the claims or defense of the case, typicality. "[T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–158, n. 13, as cited in *Wal-Mart Stores, Inc. v. Dukes* at 378 n. 5.

Commonality exists in this case since despite 15 different locations and approximately 1,057 delivery drivers, Cousin Vinny's utilized uniform employment policies, practices and procedures including those relating to payment of minimum wages, overtime wages, and flat fee reimbursement of automobile expenses for the delivery drivers based on per delivery. Although Brandenburg is seeking designation as the class representative, some 30 different Declarations have been filed by delivery drivers from different Cousin Vinny's locations and all state nearly identical employment conditions. These include being paid minimum wage less a tip credit, and working inside Cousin Vinny's store and performing tasks that included washing dishes, cleaning, and answering the phones. The delivery drivers have all stated that they were regularly required to spend between 30% to over 50% of their time working inside the store in a non-tipped capacity. Doc. ##162-2 through 162-33.

Although some delivery drivers may occasionally have received the minimum wage for inside work as opposed to minimum wage less a tip credit, Doc. #162-6, PAGEID#1296, all delivery drivers used their own vehicles, kept them insured, paid for their own fuel and maintained the vehicles in a safe legally operable condition, all as required by Cousin Vinny's. Cousin Vinny's did not record expenses incurred by their drivers, nor did they reimburse any of the drivers at the IRS standard reimbursement delivery rate. Plaintiff has also provided the Court with a report of Paul T. Lauria, an expert witness who works in the field of vehicle fleet management consulting services. Doc. #162-43. This

witness opined that it is a standard practice to reimburse employees using an aggregate reimbursement rate such as the IRS standard mileage rate, *Id.* at PAGEID##2211and 2219, and that in reviewing the compensation data provided to him to estimate reimbursement rates paid to Cousin Vinny's drivers, he found these rates to be significantly lower than the aggregate reimbursement rates developed for similar cases. *Id.* at PAGEID#2212.

Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. §531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid.

Given the uniformity of Defendants' policies, the common questions of law and fact include the following: 1. the extent of the delivery driver's reimbursement for their expenses; 2. whether the delivery drivers were adequately reimbursed for their delivery expenses; 3. the amount and pay received by the drivers for in-store work; and 4. the amount and nature of damages. All of these common questions of law and fact are relevant in determining the existence of any state law violations of non-payment of minimum wage, overtime pay and the Ohio prompt pay act. Based on the evidence before this Court, the three proposed claims depend "on a common contention ... of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, at 350.

Cousin Vinny's argues that because their delivery drivers were paid a base wage rate, per-delivery reimbursement and received cash and credit card tips, there are no minimum wage or overtime violations. While Defendants' argument may, theoretically, be possible for some delivery drivers, the need for individualized inquiry and calculation of damages is not enough to defeat commonality under Rule 23(a)(2). *Young v. Nationwide Mut. Ins. Co.*, at 543.

Similarly, the typicality requirement is also met in this case since the interests of Brandenburg will be aligned with those of all the delivery drivers and, in pursuing his own claims, "the named plaintiff will also advance the interests of the class members." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998), citing *In re American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

### D. Rule 23 (4) - Adequacy of Representation

In order to satisfy the adequacy inquiry under Rule 23(a)(4), Brandenburg "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citations and internal quotation marks omitted). As such, the Court must look to two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class

and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted).

Based on the motion and the evidence presented, Brandenburg's interests are sufficiently aligned with those of the class of delivery drivers and Plaintiff has vigorously prosecuted, along with his counsel, the claims of the class for over two years. Finally, the Court finds that the proposed class counsel is "qualified, experienced and generally able to conduct the litigation." *Id.* Accordingly, the adequacy requirement of Rule 23 (a)(4) has been satisfied.

### E.    Rule 23 (b)(3) Criteria

In addition to meeting the requirements of Rule 23(a), Brandenburg must also satisfy one of the requirements of Rule 23(b)(3) and establish either that common issues of fact or law predominate or that the class mechanism is superior to other available methods "for fairly and efficiently adjudicating the controversy." In making these findings, the matters pertinent include the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation already begun, the desirability of concentrating the litigation in a particular forum and any likely difficulties in managing a class action. Rule 23 (b)(3)(A), (B), (C) and (D).

For the reasons discussed earlier, both predominance and superiority of the class action are met in this case. Additionally, in considering the matters in Rule 23 (b)(3)(A), (B), (C) and (D), there is no evidence before this Court that members desire to individually control the prosecution of separate actions, that litigation has already begun in other venues or that there is any better forum other than this one. Finally, there are no likely difficulties in managing a class action. With over 1,000 potential class members and Cousin Vinny's acknowledgement that each of its 15 different locations applied substantially the same employment policies, practices and procedures concerning the payment of minimum wages, overtime wages and reimbursement of automobile expenses to the delivery drivers who worked there, there can be no dispute that common issues of fact and law predominate. The Declarations of the delivery drivers attached to the motion establish that there are no disparities among the delivery drivers and this proposed class is "sufficiently cohesive to warrant adjudication by representation." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517 535 (6th Cir. 2008), citing *Amchem Products, Inc. v. Windsor*, at 623 (1997).

In short, Plaintiff's state law wage and hour claims based on Cousin Vinny's failure to pay minimum wages, overtime wages and to pay these wages timely, are shared with the other delivery drivers of Cousin Vinny's and a class action certification of these claims is the superior method of adjudication.

## III. Motion to Dismiss

Cousin Vinny's has moved to dismiss Count III of Plaintiff's motion asserting that Article II, §34a of the Ohio Constitution is not self-executing and that any claim for a minimum wage violation must be brought pursuant to O.R.C. §4111.14 (K)(2). Established case law, however, has found §34a to be self-executing and permits employees to bring claims directly under the Amendment.

In *Castillo v. Morales, Inc.*, 302 F.R.D. 480 (S.D. Ohio 2014), the plaintiff moved for class certification, in part, based upon §34a. The State of Ohio argued, however, that §34a was not self-executing and instead only set forth the general authority for the General Assembly to pass O.R.C. § 4111.14 which was the controlling law. The district court disagreed.

> A constitutional provision is self-executing "if it supplies a sufficient rule by means of which the right which it grants may be enjoyed and protected, or the duty which it imposes may be enforced, without the aid of a legislative enactment." *State ex rel. Russell v. Bliss*, 156 Ohio St. 147, (1951). Put another way, a clause is self-executing if it "contains more than a mere framework, and specifically provides for carrying into immediate effect the enjoyment of the rights established therein without legislative action." *In re Protest Filed by Citizens for Merit Selection of Judges, Inc.*, 49 Ohio St.3d 102, 551 N.E.2d 150, 152 (1990). Section 34a creates a precise framework, describing who is entitled to minimum wages, when its terms take effect, how to enforce the rights it establishes, setting forth a cause of action, damages, and a limitations period. The fact that the General Assembly is empowered to pass legislation to "implement its provisions and create additional remedies, increase the minimum wage rate and extend coverage of the section" hardly renders § 34a non-self-executing. *Id.* at 489.

Similarly, in *Brenneman v Cincinnati Bengals, Inc.*, No. 1:14-cv-136, 2014 WL 5448864, (S.D. Ohio Oct. 24, 2014), the district court, in ruling on a

14

motion to dismiss, agreed with *Castillo* and found that §34a was self-executing, since the Amendment was sufficiently precise to provide clear guidance to the courts with respect to application. *State v. Williams*, 88 Ohio St. 3d 513 (2000).

> Article II, § 34a satisfies the *Williams* standard. It sets forth more than general principles, and instead, provides specific criteria for carrying into immediate effect the rights established therein without legislative action. In particular, it describes who is entitled to minimum wages, the amount of the minimum wage and a formula for thereinafter calculating the minimum wage, the recordkeeping requirements, the effective date, methods of enforcement, a method for calculating damages, and a limitations period. Ohio Const. Art. II, § 34a. That constitutional provision thus is complete in and of itself, and no legislative enactment is needed to put its terms into effect.

*Brenneman v. Cincinnati Bengals, Inc.*, at 4.

This Court agrees that the Amendment passed by the Ohio voters in November 2006 is self-executing and that it "creates a precise framework" giving the necessary guidance to the Court in its application. Additionally, and according to the language of the Amendment, §34a is to be "liberally construed in favor of its purposes. Laws may be passed to implement its provisions and create additional remedies, increase the minimum wage rate and extend the coverage of the section, but in no manner restricting any provision of the section…" Ohio Constitution, art. II, §34a.

Defendants also contend, citing to earlier case law, that a Rule 23 class action with Ohio law claims cannot exist in the same case with a collective FLSA case due to the conflicting "opt-in" and "opt-out"

15

requirements. Doc. #165, PAGEID#2275. However, there is "nothing inherently incompatible between an FLSA opt-in suit and an Ohio ... Rule 23 class action" existing within the same litigation. *Wade v. Werner Trucking Co.*, 2011 WL 320233 at 2 (S.D. Ohio Jan. 28, 2011); *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R. D. 249 (S.D. Ohio 2017). Additionally, and contrary to Defendants' argument, supplemental jurisdiction of state law claims is appropriate since the Court has original, federal question jurisdiction due the FLSA collective action and it is not disputed that the federal claim and the state law claim "derive from a common nucleus of operative facts." *Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002).

## IV. Notice

Rule 23 (c)(2), requires this Court to direct to class members the best notice that is practicable under the circumstances, including giving individual notice to all members who can be identified through reasonable effort. Plaintiff has attached to this motion a proposed notice, Exhibit 45, Doc. # 162 PAGEID#2253-2255, which meets the requirements of Rule 23 (c)(2). Specifically, the proposed notice explains the nature of the action, the definition of the class certified, as well as the claims, issues and defenses involved in the class action. *Id.* PAGEID#2253-2254. The proposed notice also explains the procedure for how a class member can opt-out of the class, identifies the class counsel, states that the delivery drivers may enter an appearance using their own counsel and the binding effect

16

of a class judgment on the members. Plaintiff's proposed notice will be sent by mail and email to potential class members and if the notice is returned or undeliverable, a follow up notice would then be sent via text message. If the individual is still unable to be located, Plaintiff proposes that the delivery driver's name would be run through a database to obtain an address. Doc. #162, PAGEID#1248.

The Court finds that the proposed notice, Exhibit 45, and the manner of contacting of potential class members, complies with Rule 23 (c)(2) and approves same.

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion to Certify a Rule 23 Class Action is SUSTAINED, Doc. # 162, and Defendants' Motion to Dismiss Count III, Doc. #165, is OVERRULED. Additionally, the Court orders the following:

1. Plaintiff Thomas Brandenburg is designated as the Representative of the class;

2. Andrew Biller and Andrew Kimble, of Markovits, Stock & DeMarco, LLC, are approved as lead counsel for the class; and

3. Notice, as set forth in Doc. #162-45, is approved and may be transmitted at Plaintiff's cost to putative members via electronic mail and first-class U.S. mail with a follow up notice to be sent via text message if the mailing is returned. If

17

the individual is still unable to be located, then the name is to be run through a database to obtain an address.

Date: November 5, 2018

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE