IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Thomas Brandenburg, | Case No. 3:16-cv-516 |
| *On behalf of himself and those similarly situated,* | |
| Plaintiff, | Judge Walter H. Rice |
| v. | Magistrate Judge Michael J. Newman |
| Cousin Vinny's Pizza, LLC, *et al.*, | |
| Defendants. | |

ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Before the Court are Plaintiff's unopposed motion for final approval of the class action settlement (Doc. 185 and 187) and the oral arguments presented by counsel at the fairness hearing on November 13, 2019. For the reasons stated below, the Court grants Plaintiff's motion.

I.  **Background**

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Cousin Vinny's Pizza stores. Plaintiff originally filed this lawsuit on December 23, 2016. *See* Complaint, Doc. 1. Plaintiff subsequently moved for FLSA conditional certification (Doc. 5) and class certification (Doc. 162). The Court granted both motions (Doc. 55 and Doc. 169). Plaintiff alleges, on behalf of himself and similarly situated employees, three categories of wage and hour violations under state law and the Fair Labor Standards Act.

1

First, Plaintiff alleges that Defendants under-reimbursed Plaintiff and similarly situated workers for their expenses related to using their own vehicles to deliver pizzas. *See* Amended Complaint, Doc. 28, ¶ 211. Specifically, Plaintiff alleges that Defendants did not reimburse the drivers for their actual expenses or reimburse them at the IRS rate.

As this Court previously held when evaluating Ohio law, which, in the context of paying wages "free and clear" and without "kickbacks," uses the same standard as the FLSA, "[b]ecause the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *4 (S.D. Ohio Nov. 6, 2018)(certifying this case as a Rule 23 class action under Ohio law); *see also Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, at *7 (S.D. Ohio Nov. 5, 2019) (granting summary judgment in favor of pizza delivery drivers and holding that "[a]s a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service."). Defendants argue that the reimbursement rate they paid was adequate and, at a minimum, higher than Plaintiff calculated.

Second, Plaintiff alleges that, for at least some of the relevant time period, Defendants paid delivery drivers a "tipped wage rate" for work done in a non-tipped capacity. *See* Amended Complaint, Doc. 28, ¶ 210. In other words, Plaintiff claims that, while his time spent delivering pizzas was part of a "tipped occupation," his time spent inside the store building pizza boxes, answering phones, and cleaning was part of a "non-tipped occupation." *See* 29 C.F.R. 531.56(e)

(describing employees working "dual jobs"). Defendants argue that any time spent in the store was minimal and related to Plaintiff's tipped occupation such that the time may be compensated at a tipped wage rate.

Third, Plaintiff brings a claim for unpaid wages under Ohio's Prompt Pay Act, O.R.C. § 4113.15(B) for the underlying allegedly unpaid wages. *See* Amended Complaint, Doc. 28, ¶¶ 323–325. This claim can "rise and fall" with an underlying violation of another wage requirement. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n. 1 (6th Cir. 2016). The Prompt Pay Act applies to any Ohio employer that "conducts business within the State of Ohio," including those that, as Defendants do, employ individuals outside of the Ohio. *Parks v. Cent. USA Wireless, LLC*, No. 1:17-cv-448, 2019 WL 4743648, at *6 (S.D. Ohio Sept. 29, 2019).

Finally, Plaintiff also alleges that, after he filed this lawsuit, Defendants retaliated against him by providing a negative reference to prospective employers. *See* Amended Complaint, Doc. 28, ¶¶ 333–346.

## II. The Settlement Agreement

The parties' settlement agreement obligates Defendants to pay $1,140,000 to class members who either (1) joined the lawsuit in response to the FLSA notice of conditional certification or (2) submitted a claim form and release in response to the notice of settlement. The settlement amount includes money that will go toward attorney's fees, expenses, an incentive award, and an amount to settle Plaintiff's personal retaliation claim.

Generally speaking, the settlement money is allocated to class members based on (1) when they opted into the case and (2) how many hours they worked. Specifically, those individuals who filed claims earlier may have preserved more of their FLSA claims than those

filing later claim forms.[1] Thus, it is reasonable to give those individuals a larger share of the settlement fund. In this case, the larger share is a 1.5 share, compared to single share for others. The Court finds that it is equitable to divide the fund in this way.

Based on the claim numbers that counsel presented to the Court at the Fairness Hearing, out of approximately 1,354 class members, approximately 34% of the total class either opted in or filed a claim form. After fees, expenses, the incentive award, and the retaliation settlement are deducted, Class Members will receive an average of approximately $1,600 each.

Defendants will make the settlement payments in two installments. The first is due at the end of January 2020, and the second is due at the end of January 2021. Money going to Plaintiff and Plaintiff's counsel will also be paid in installments under the same terms as the class members.

In exchange for the payments, Plaintiff and the class members release all of their Ohio law claims "that were asserted in the Lawsuit concerning the alleged under-reimbursement of expenses and alleged underpayment of wages for non-tip-related work performed inside the stores, or that could have been asserted in the Lawsuit based upon the same factual allegations concerning the under-reimbursement of expenses and hours worked inside the store in a non-tipped capacity" for the period of December 23, 2013 until April 23, 2019. Plaintiff and all class members who either opted into the case or filed a claim form also release the same claims under the Fair Labor Standards Act.

III. Analysis

    a. **The parties' settlement is fair and reasonable.**

---

[1] Arguments for equitable tolling notwithstanding.

Before a district court approves a settlement, the Court must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, Case No. 2:11-cv-1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013) (citation omitted). In the Sixth Circuit, district courts consider seven factors in determining whether a class settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). As set forth below, each of these factors weighs in favor of approving the parties' settlement.

### i. The Notice Process

The Court will consider the notice process used in this case. Here, class members received three notices related to the lawsuit.

First, as part of the Court's Order granting conditional collective action certification (Doc. 55), the class members received a notice and opt-in form. Class members received the notice by both regular mail and email and could join the case by submitting a consent form in physical or electronic form. Notice of the lawsuit was also posted at Cousin Vinny's locations. Moreover, the Court authorized a notice via text message if the other forms of notice failed.

Second, as part of the Court's Order granting class certification (Doc. 169), class members received a notice about this lawsuit. Again, class members received the notice by both regular mail and email, with a follow up notice if either was returned as undeliverable.

Third, class members received a notice of the settlement by both regular mail and email. Class members were able to file claims in physical form or through an electronic DocuSign form.

Moreover, Plaintiff's counsel represents, in the event the notices were returned as undeliverable, counsel utilized online address databases to search for updated addresses. *See* Motion, Doc. 187, PAGEID 2627. Where that was unsuccessful, Plaintiff's counsel called the class member to obtain an updated address. *Id.*

The Court finds that this notice process provided class members with an appropriate notice under Rule 23 and met the FLSA's remedial goals. According to Class Counsel, of the 1,354 class members, approximately 96.5% received the notice. The Court finds that this is an excellent result and reflects well on the notice process used in this case. Moreover, as stated above, the opt-in/claims rate in this case is above average at over one third of the class joining the case or filing claims.

### ii. The Risk of Fraud or Collusion

The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations conducted by experienced counsel on both sides. The parties attended two all-day mediations that did not result in a settlement. And, the record reflects this case was hotly contested for nearly two-and-a-half years. Nothing before the Court suggests that the Settlement is the result of fraud or collusion.

### iii. The Complexity, Expense and Likely Duration

From the outset, the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). This case was no exception.

This case involved complex issues of fact and law regarding the legally-mandated reimbursement rate for delivery drivers and the application of the FLSA's "dual jobs" rules. Resolving these issues and the remaining discovery, procedural, merits, and damages questions

would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement.

### iv. The Amount of Discovery Engaged in by the Parties

The parties have engaged in substantial discovery in this case. In particular, the parties exchanged the most relevant pieces of information in this case—records of driver, payroll, and delivery data. The Court finds that this exchange of information is sufficient to inform settlement negotiations by experienced counsel.

### v. The Opinions of Class Counsel and Class Representatives

Plaintiff, present at the fairness hearing, approves the Settlement Agreement. Class Counsel believes that the settlement is fair, adequate and reasonable. This factor weighs in favor of approval. *See In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the settlement") (internal quotations and citations omitted).

### vi. The Reaction of Absent Class Members

The class's reaction strongly supports approval. Out of 1,354 class members, none objected or excluded themselves from the settlement. 455 or 33.6% of the class filed claim forms and releases. At the Fairness Hearing, counsel represented that around five additional individuals submitted claim forms after counsel filed their settlement paperwork. The parties agreed to include those individuals in the settlement as well.

At the Fairness Hearing, Plaintiff's counsel represented that he believed this is an above average response rate in a wage and hour case. The Court agrees.

The fact that no one objected or excluded him or herself supports finding that the settlement is fair, adequate, and reasonable. This is buttressed by the excellent notice process used in this case, which ensured that nearly all class members had an opportunity to consider whether to participate in the case.

A single class member attended the Fairness Hearing. He did not object, but, instead asked a question, which the Court answered. The Court then recessed to allow the class member to discuss any other questions with counsel. The class member had no further questions.

### vii. The Public Interest

Public policy favors settlement of class action lawsuits. *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). This case is no exception. The settlement provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources. Accordingly, the Court finds that this factor weighs in favor of approving the proposed Settlement.

### viii. Overall Settlement Terms

The Court finds that the settlement provides a fair, adequate, and reasonable resolution to this lawsuit. The settlement provides class members with a substantial recovery for the claims raised in this lawsuit.

Moreover, and perhaps most importantly, the settlement is a good result in light of the concerns over collectability in this case. For example, Defendants argued that class certification in this case "may ultimately drive [Defendants] into bankruptcy." Defendants' Opposition, Doc. 165, PAGEID 2271. When a case implicates a defendants' ability to pay a judgment greater than the proposed settlement, the Court, like Class Counsel, must measure success in light of the practical realities of a defendants' financial condition.

Thus, the Court commends both parties in working together to find a solution that provides relief to the class members and is financially viable for Defendants. The Court finds this is a good result for the class members and appropriately accounts for the risk of going forward with the litigation.

The Court **GRANTS** Plaintiff's unopposed motion for final approval of the parties' settlement agreement.

### b. Fees, Expenses, and Service Awards

#### i. Plaintiffs' counsel are entitled to their requested fee

Class Counsel asks the Court to approve an attorney's fees award of one-third of the settlement fund, *i.e.*, $380,000. Doc. 187, PAGEID 2636. Defendants do not object to the requested fee award.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). *See Lowther v. AK Steel Corp.*, Case No. 1:11-cv-877, 2012 WL 6676131, at *1, 2012 U.S. Dist. LEXIS 181476, at * 2 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

#### 1. The Court adopts the percentage approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This

flexible approach allows the Court to account for the unique and varied circumstances present in each class action. In the Southern District of Ohio, the preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (citation omitted). The Court will use the preferred method in this district and award a percentage-of-the-fund.

Here, Class Counsel requests an award of one-third of the settlement fund as a fee award. This is a normal fee amount in a wage and hour case. *See, e.g., Carr v. Bob Evans Farms, Inc.,* No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund."). The Court will not deviate from the norm here. Counsel's request for a one-third fee is approved.

### 2. The *Ramey* factors

In reviewing the reasonableness of the requested fee award, courts consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza, Inc.,* No. 3:16-cv-386, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018). There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.,* No. 1:13-cv-341, 2018 WL 3957364, at *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus

different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, Class Counsel's work resulted in significant benefit to class members whereby each class member who filed a claim form or joined the case will receive an average of approximately $1,600 *after* fees, expenses, service awards, etc. In the context of this lawsuit, particularly when considering Defendants' financial ability to pay anything more, this is an excellent result. The settlement provides tangible relief to class members and eliminates the risk and uncertainty that the parties would otherwise face if this litigation were to continue. The fact that there have been no opt-outs to the settlement and no objections demonstrates that class members recognize the settlement's substantial benefit. *See Hainey v. Parrott*, 617 F.Supp.2d 668, 675 (S.D. Ohio 2007) ("a small number of objections, particularly in a class of this size, indicate that the settlement is fair, reasonable and adequate").

Second, the Court finds that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8, 2017 U.S. Dist. LEXIS 102621, at * 26 (S.D. Ohio June 30, 2017) (citation omitted). Class Counsel's efforts resulted in a substantial monetary benefit for the class members. Many of the class members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

Third, Class Counsel litigated this matter on a wholly-contingent basis with no guarantee of recovery. *See* Biller Dec., Doc. 185-1, ¶ 8. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiff's counsels' fee request. *Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.

The chart below summarizes Class Counsel's rates and hours:

| Name | Rate | Time | Total |
| --- | --- | --- | --- |
| Andrew Biller | $600 | 181.10 | $108,660.00 |
| Andrew Kimble | $550 | 326.90 | $179,795.00 |
| Philip Krzeski | $350 | 119.20 | $41,270.00 |
| Paul De Marco | $600 | 24.90 | $14,700.00 |
| Paralegal | $125 | 632.65 | $79,081.25 |
| **Total** | | 1,284.75 | $423,506.25 |

Here, Class Counsel expended 1,284.75 hours litigating this case. *See* Doc. 185-1, ¶ 9. The total lodestar is $423,506.25, resulting in an average hourly rate of $329.64. Given this case's size, complexity, and difficulty, the Court finds that the hours expended, total lodestar, and average hourly rate are all reasonable.

The Court has also considered Class Counsel's individual hourly rates. In doing so, the Court may look at "national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730,

740 (6th Cir. 2002) (citing *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.3d 268, 278 (6th Cir. 1983)).

Here, Class Counsel described their high level of expertise in the niche of "pizza delivery driver litigation." Doc. 185-1, ¶¶ 10–11. The Court is familiar with Class Counsel's work in this and other cases like it. The "pizza delivery driver" cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary and warrants rates reflective of their expertise. "Plaintiff's counsel [Biller & Kimble, LLC's lawyers], having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019). Accordingly, the Court finds that Class Counsel's hourly rates are reasonable in light of counsel's experience, skill, and areas and level of expertise.

Using Class Counsel's reasonable hourly rates and the hours reasonably expended, the proposed fee award is less than Class Counsel's lodestar. Given that cases like this often result in a *multiplier* on the lodestar, the Court finds that the lodestar here supports the requested fee. Indeed, the lodestar would support a much higher fee award. *See, e.g., Swigart*, 2014 WL 3447947, at *6 (finding a 2.57 multiplier was appropriate in an FLSA class/collective action); *see also Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Castillo v. Morales, Inc.*, No. 2:12-cv-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (holding that a 2.5 multiplier is "typical of lodestar multipliers in similar cases").

Fifth, as noted above, this was a complex wage and hour class/collective action. The Court finds that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiff and Defendants are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Class Counsel has substantial experience in wage-and-hour litigation and "pizza delivery driver litigation" in particular. *Mullins*, 2019 WL 275711, at *5. The Court is familiar with the professional and high-quality advocacy of David Greer, Defendants' lead counsel. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court determines the fees requested are reasonable, and **GRANTS** Class Counsel's request for fees in the amount of $380,000.

### 3. Class Counsel is entitled to reimbursement of expenses.

Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (quotation omitted).

Here, Class Counsel requests $15,266.88 in expenses that have been incurred prosecuting this case. Doc. 187, PAGEID 2643. The limited expenses primarily include filing fees, mediation costs, expert fees, and class notice-related fees. Upon review, the expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable. Defendants do not dispute that the fees are reasonable and reimbursable.

Accordingly, the Court **GRANTS** Class Counsel's request for $15,266.88 in expenses.

### ii. The class representative is entitled to a contribution award.

Plaintiff Thomas Brandenburg requests a service award of $10,000, which Defendants do not oppose. The Supreme Court recently recognized that a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811, n.7 (2018). It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit.

But for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real.

The Court finds that Plaintiff contributed his efforts to the lawsuit and only through Plaintiff's efforts did a large group of low-wage workers receive a substantial award. Plaintiff's efforts furthered the important public policies underlying the Fair Labor Standards Act and Ohio's wage laws. The Court finds that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow workers.

Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $10,000. This award is in line with other awards in the same type of case. *See Arledge*, 2018 WL 5023950 at *6; *Mullins*, 2019 WL 275711 at *6; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, at Doc. 52 (N.D. Ohio May 17, 2019).

### IV. Conclusion

Based upon the foregoing, Plaintiff's unopposed motion for final settlement approval (Doc. 187) is **GRANTED**. Accordingly:

1. Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the settlement agreement is fair, reasonable, and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class members to the settlement agreement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the class members.
2. The terms and provisions of the Settlement Agreement are the product of thorough, arms-length negotiations among experienced and competent counsel. Approval of the Settlement Agreement will result in substantial savings of time, money and effort to the Court and the parties, and will further the interests of justice.
3. All class members are bound by this Judgment and by the terms of the Settlement Agreement.
4. Nothing in the Settlement Agreement, this Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Action.
5. The Court has considered the submissions by the parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in

prosecuting the claims on behalf of the class members. Plaintiff participated in the Action, acted to protect the Class, and assisted his counsel. The efforts of Class Counsel have produced the Settlement Agreement entered into good faith, and which provides a fair, reasonable, adequate, and certain result for the Class. Class Counsel have made application for an award of $380,000 in attorneys' fees and $15,226.88 in expenses incurred in the prosecution of the Action on behalf of themselves and the other Plaintiff's counsel. The combined total of the award is $395,226.88, which the Court finds to be fair, reasonable, and adequate under the circumstances. The Court hereby awards $395,226.88 as attorneys' fees and expenses. Further, Plaintiff is entitled to a fair, reasonable and justified service award of $10,000, to be paid by Defendant from the Settlement Fund. The Court also approves the individual settlement of Plaintiff in the amount of $12,000 to compensate him for his retaliation claim.

6. Under the terms of the Settlement Agreement, the parties will notify the Court once the final settlement payment is made, at which time the Court will dismiss the Action with prejudice, and all Released Claims against each and all Released Persons, and without costs to any of the parties as against the others.

7. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto.

Date: 11-25-19

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE